**SIGNED THIS: December 29, 2016**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 16-70699 |
| ARIANNA BROWN, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| NANCY J. GARGULA, ) | |
| United States Trustee for Region 10, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 16-7036 |
| ) | |
| ARIANNA BROWN, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

This matter is before the Court following a trial on the complaint of Nancy

J. Gargula, the United States Trustee ("UST"), objecting to the discharge of Arianna Brown ("Debtor"). Because the UST failed to meet her burden of proof, judgment will be entered in favor of the Debtor.

## I. Factual and Procedural Background

The Debtor filed her voluntary Chapter 7 petition on April 26, 2016. On her Statement of Financial Affairs ("SOFA") and Schedule A/B: Property, filed concurrently with her petition, the Debtor failed to disclose her ownership of savings bonds that she purchased shortly before filing bankruptcy. Mariann Pogge was appointed chapter 7 trustee in this case. After an initial and a continued meeting of creditors were conducted by Ms. Pogge, the Debtor filed amended schedules listing the savings bonds and claiming a portion of the value of the savings bonds as exempt.

The UST subsequently filed a Complaint to Deny Discharge against the Debtor. The basis for the complaint was the Debtor's failure to list her ownership of the savings bonds in her initial schedules, as well as the Debtor's omission of information regarding the savings bonds at her initial meeting of creditors. The Debtor's attorneys withdrew from their representation of her, after which the Debtor filed a *pro se* answer denying any intentional misconduct and attributing the initial non-disclosure to her attorneys' failure to properly review documents she had supplied to them.

At a trial held on December 12, 2016, both Ms. Pogge and the Debtor testified. Ms. Pogge testified that she routinely asks debtors to provide financial documents, including bank statements showing the balance of accounts as of the

petition date. The Debtor gave some bank statements to Ms. Pogge in advance of her creditors' meeting, including an account statement for the period of February 25 through March 23, 2016. Ms. Pogge noted that the receipt of a tax refund of over $11,000 and two deductions for $2000 each to "Treasury Direct" were reflected on that statement. She asked the Debtor about the deductions at the initial meeting but the Debtor said that she did not recall why the deductions were made. Ms. Pogge continued the meeting and asked the Debtor to prepare an accounting regarding the use of her tax refund and to explain the Treasury Direct deductions. The Debtor was also requested to provide a bank statement showing the account balance as of the petition date.

At the continued meeting, the Debtor provided Ms. Pogge with the requested information. She gave Ms. Pogge a hand-written accounting of the expenditures from her tax refund, which noted $5000 for "Treasury Direct (Savings Bonds)." According to Ms. Pogge, the Debtor then testified at the continued meeting that she was unaware that she had to list savings bonds on her schedules. Ms. Pogge also testified that, after the Debtor amended her schedules and claimed a partial exemption in the savings bonds, she turned over the value of the non-exempt portion of the bonds.

The Debtor testified that she did not intend to withhold information from Ms. Pogge. She testified that she provided her bank statements to her attorneys, who said they would carefully review the documents because they knew Ms. Pogge would do the same. The Debtor also testified that her attorneys never asked her about the savings bonds, but, on cross-examination, she stated that her lawyers did ask her if she had any savings bonds and she said "no." As explanation, the

Debtor testified that she was not thinking about the bonds, either when meeting with her attorneys or at the initial meeting of creditors, because the funds to purchase the bonds were automatically deducted from her bank account.

Neither party offered any argument at the close of trial. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Objections to discharge are core proceedings. *See* 28 U.S.C. §157(b)(2)(J). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code, and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Analysis

The UST's complaint is brought under §727(a)(4)(A) of the Bankruptcy Code. That provision requires denial of a Chapter 7 debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). A plaintiff seeking to deny a debtor's discharge under §727(a)(4)(A) "must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with

fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). A debtor's fraudulent intent can be established by showing either intentional misrepresentations or a reckless disregard for the truth. *Id.* at 982. Exceptions to discharge under §727(a) are construed strictly against the plaintiff and liberally in favor of the debtor. *Id.* at 979 (citations omitted).

The first, second, and fifth elements of the test described in *Stamat* are clearly met in this case. Statements made by a debtor at a meeting of creditors or in the debtor's bankruptcy petition, schedules, or SOFA are all considered to be under oath for the purposes of §727(a)(4)(A). *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). A fact is material if it relates to the debtor's financial dealings or the existence and disposition of the debtor's property. *Stamat*, 635 F.3d at 982. Here, the Debtor failed to disclose assets and financial transactions on her schedules and SOFA. She also testified falsely at her initial meeting of creditors that her bankruptcy forms were complete and accurate. These misstatements and omissions related to property of the estate. The false statements regarding the completeness of the Debtor's schedules and the lack of ownership of any savings bonds were material to the bankruptcy.

The UST did not, however, meet her burden of proof as to the Debtor's state of mind at the time of the false statements. The Debtor testified that she relied on her attorneys to complete her bankruptcy forms accurately, and that she did not realize she omitted information pertaining to the savings bonds because the bonds

-5-

were automatically purchased using her tax refund. But before her initial meeting of creditors, she provided bank statements to Ms. Pogge that showed the deductions for Treasury Direct. And the Debtor quickly provided Ms. Pogge with the additional information requested following that initial meeting. When accounting for the use of her tax refund, the Debtor candidly identified the Treasury Direct deductions as savings bond purchases. Once it was determined that the savings bonds were property of the estate, she promptly amended her schedules and turned over the value of the non-exempt portion of the bonds.

The Debtor credibly testified that her omission of the savings bonds from her bankruptcy statements and creditors' meeting testimony was an oversight. The fact that the Debtor has otherwise been forthcoming in this case supports her position. Nothing whatsoever was presented by the UST from which an inference could be drawn that the Debtor intended to make a knowingly false statement. Based on the totality of the Debtor's conduct in this case and her unrebutted testimony at trial, the Court concludes that the Debtor's misstatements and omissions were innocent mistakes, and that she did not make knowingly false statements with fraudulent intent.

### IV. Conclusion

The UST did not meet her burden to prove that the Debtor knowingly and fraudulently made a false oath in connection with this case. Clearly, the Debtor omitted material information regarding the savings bonds from her bankruptcy

forms and initial meeting of creditors' testimony. All evidence suggests, however, that the omission of the savings bonds from the initial disclosures was an inadvertent error and not the result of the type of reckless disregard or intentional fraud that would support the denial of her discharge.

Nothing in this Opinion should be construed as condoning omissions or misstatements in bankruptcy paperwork or creditors' meeting testimony. To the contrary, accuracy is required. But every omission does not justify a denial of discharge and here the Debtor turned over documents which disclosed her ownership of the savings bonds to both her own attorneys and to Ms. Pogge before she was questioned about her assets. Under these precise and limited circumstances, a denial of her discharge is not warranted. Judgment will therefore be entered in favor of the Debtor and against the UST. The Debtor will receive her discharge.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###